IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VICTOR E. PFENDLER, | ) | CIV. NO. 14-00377 HG-KJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIBERTY DIALYSIS-HAWAII, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT LIBERTY DIALYSIS-HAWAII'S MOTION FOR SUMMARY JUDGMENT (ECF No. 34)**

Plaintiff Victor E. Pfendler has filed a Complaint alleging his former employer Defendant Liberty Dialysis-Hawaii, LLC discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act.  Plaintiff also alleges he was retaliated against for filing a disability discrimination claim with the Equal Employment Opportunity Commission.

Defendant seeks summary judgment on both of Plaintiff's claims.  Defendant asserts that Plaintiff injured his shoulder in January 2012 and could not lift enough weight to perform the essential functions of his position as a Dialysis Technical Specialist.  Defendant asserts it provided Plaintiff with reasonable accommodations when it approved his requests for medical leave between January 2012 and December 2012.

1

Defendant argues that it reasonably accommodated Plaintiff's injury further in January 2013 when it approved Plaintiff's request for an internal position transfer to the position of a Hemodialysis Technician II, which did not require heavy lifting.

Plaintiff claims that Defendant discriminated against him by refusing to allow him to return to his Dialysis Technical Specialist position.  Plaintiff acknowledges that he accepted the Hemodialysis Technician II position but asserts that the position was a demotion and was in retaliation for the Charge of Discrimination Plaintiff filed with the Equal Employment Opportunity Commission.

Defendant Liberty Dialysis-Hawaii, LLC's Motion for Summary Judgment (ECF No. 34) is **GRANTED.**

## PROCEDURAL HISTORY

On August 25, 2014, Plaintiff filed a Complaint.  (ECF No. 1).

On June 8, 2016, Defendant filed DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT along with DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S CONCISE STATEMENT OF UNDISPUTED FACTS. (ECF Nos. 34 and 35).

On June 16, 2016, the Court issued a briefing schedule. (ECF No. 36).

2

On June 27, 2016, Plaintiff requested a two week extension to file his Opposition. (ECF No. 38).

On the same date, the Court issued a Minute Order granting Plaintiff's request for an extension of time. (ECF No. 39).

On July 12, 2016, Plaintiff filed PLAINTIFF VICTOR PFENDLER'S MEMORANDUM IN OPPOSITION TO DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT and PLAINTIFF VICTOR PFENDLER'S CONCISE STATEMENT OF FACTS IN RESPONSE TO DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S CONCISE STATEMENT OF UNDISPUTED FACTS. (ECF Nos. 41 and 42).

On July 21, 2016, the Court issued a Minute Order striking Plaintiff's Memorandum in Opposition and Concise Statement of Facts (ECF Nos. 41 and 42) for failure to comply with the Local Rules for the District of Hawaii. (ECF No. 43).

On July 28, 2016, Plaintiff filed PLAINTIFF VICTOR PFENDLER'S MEMORANDUM IN OPPOSITION TO DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT and PLAINTIFF VICTOR PFENDLER'S FIRST AMENDED CONCISE STATEMENT OF FACTS IN RESPONSE TO DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S CONCISE STATEMENT OF UNDISPUTED FACTS. (ECF Nos. 44 and 45).

On August 5, 2016, Defendant filed DEFENDANT LIBERTY DIALYSIS-HAWAII, LLC'S REPLY MEMORANDUM. (ECF No. 47).

On August 16, 2016, the Court held a hearing on Defendant's Motion.  (ECF No. 49).

## BACKGROUND

The Parties do not dispute the following facts:

On January 15, 2006, Plaintiff was hired by Defendant Liberty Dialysis-Hawaii, LLC.  (Deposition of Plaintiff Victor Pfendler ("Pfendler Depo.") at p. 35, ECF No. 35-8).

Defendant Liberty Dialysis-Hawaii, LLC provides treatment to individuals with impaired kidney function at 17 clinics in Hawaii.  (Declaration of Mary Ann Whaley ("Whaley Decl.") at ¶¶ 3, 8, attached to Defendant's Concise Statement of Facts, ECF No. 35-2).

Over a five year period, Plaintiff held various positions with Defendant, including the supervisory position of Chief Technician from 2008 to 2011.  (Pfendler Depo. at pp. 36-38, 61, 89, ECF No. 35-8).  On June 20, 2011, Plaintiff applied to change his position to that of a Dialysis Technical Specialist. (Internal Application dated June 20, 2011, attached as Ex. 10 to Pfendler Depo, ECF No. 35-9 at p. 9).

The responsibilities of the Dialysis Technical Specialist position included the overall operation, repair and maintenance of the physical plant, water treatment equipment, medical equipment plumbing, electrical systems and maintaining environmental cleanliness.  (Liberty Dialysis-Hawaii Job

4

Description and Performance Evaluation, attached as Ex. 13 to Pfendler Depo., ECF No. 35-9 at p. 12).

The written job description for the Dialysis Technical Specialist position indicated that it required lifting 75 to 100 pounds.  (Id. at p. 14).

On June 22, 2011, Plaintiff accepted the Dialysis Technical Specialist Position.  (Applicant Routing/Interview Evaluation Sheet, attached as Ex. 11 to Pfendler Depo., ECF No. 35-9 at p. 10).

Approximately seven months later, in January 2012, Plaintiff Pfendler injured his left shoulder at home and sought medical leave from work.  (Pfendler Depo. at 99-13-14, ECF No. 35-8; Whaley Decl. at 11, ECF No. 35-2).

On January 16, 2012, Plaintiff provided Defendant with a certificate from Dr. Elizabeth M. Ignacio that stated Plaintiff was "totally incapacitated" and he could not work due to his shoulder injury.  (Orthopedic Associates of Hawaii Certificate dated January 16, 2012, Ex. 17 attached to Pfendler Depo., ECF No. 35-10 at p. 1; Whalen Decl. at ¶ 12, ECF No. 35-2).

Plaintiff remained on approved medical leave until February 9, 2012, when he requested an extended medical leave from work due to his left shoulder injury.  (Certification of Health Care Provider for Employee's Serious Health Condition, attached as Ex. 14 to Pfendler Depo., ECF No. 35-9 at p. 16-19).

Defendant approved Plaintiff's request for extended medical leave. (Whaley Decl. at ¶ 15, ECF No. 35-2).

In March 2012, Plaintiff Pfendler contacted Mary Ann Whaley, the Human Resources Manager for Defendant. (Whaley Decl. at ¶ 18, ECF No. 35-2). Plaintiff asked Ms. Whaley if he could return to his position as a Dialysis Technical Specialist in a "light duty" capacity where he would be excused from lifting duties. (Whaley Decl. at ¶ 18, ECF No. 35-2). Ms. Whaley informed Plaintiff that heavy lifting was an essential part of the position and that there was no "light duty" available for a Dialysis Technical Specialist. (Whaley Decl. at ¶ 19, ECF No. 35-2).

Defendant permitted Plaintiff to remain on medical leave from March 2012 until December 2012 because of his shoulder injury. (Whaley Decl. at ¶ 23, ECF No. 35-2).

Plaintiff Pfendler provided Defendant with updated medical certificates in April, June, August, September, October, and December 2012, all of which stated that Plaintiff was unable to lift heavy weights and was not allowed to engage in repetitive overhead lifting. (Medical certificate dated February 27, 2012, Ex. 17 attached to Pfendler Depo., ECF No. 35-10 at p. 8; Return to Duty Form dated March 14, 2012, ECF No. 35-10 at p. 10; Medical Certificates dated June 5, 2012 and June 22, 2012, ECF No. 35-10 at p. 13-14; Medical Certificate dated August 3, 2012,

ECF No. 35-10 at p. 15; Medical Certificates dated September 18, 2012 and October 30, 2012, ECF No. 35-10 at p. 16-17; Medical Certificates dated December 18, 2012 and December 28, 2012, ECF No. 35-10 at p. 18-19).

On November 29, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, claiming Defendant discriminated against him on account of his disability.  (Charge of Discrimination at p. 2, ECF No. 44-3).

In December 2012, Defendant's Human Resource Manager, Mary Ann Whaley, spoke to Plaintiff Pfendler and asked him if he would consider applying for an internal transfer to a position that did not require heavy lifting.  (Whaley Decl. at ¶ 28, ECF No. 35-2).

A month later, on January 8, 2013, Plaintiff Pfendler applied for an internal transfer with Defendant to a Hemodialysis Technician II position.  (Whaley Decl. at ¶ 29, ECF No. 35-2). Plaintiff stated on his application that he applied to transfer from the Dialysis Technical Specialist position because he was unable to meet the lifting requirements.  (Pla.'s Application dated January 8, 2013, attached as Ex. 15 to Pfendler Depo., ECF No. 35-9 at p. 20).

On January 17, 2013, Defendant accepted Plaintiff's transfer application and placed him in the Hemodialysis Technician II position.  (Whaley Decl. at ¶ 30, ECF No. 35-2; Letter from Defendant to Plaintiff dated January 17, 2013, attached as Ex. D

7

to Def.'s CSF, ECF No. 35-6).

On January 22, 2013, Plaintiff filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission, claiming disability discrimination and retaliation.  (Charge of Discrimination dated January 22, 2013, attached as Ex. 2 to Pla.'s CSF, ECF No. 44-3).

Plaintiff remained in the Hemodialysis Technician II position until March 2014, when Plaintiff suffered another injury that left him unable to perform his job.  (Pfendler Depo. at p. 158, ECF No. 35-8).

On May 27, 2014, the Equal Employment Opportunity Commission issued Plaintiff a right-to-sue letter.  (Complaint at ¶ 6, ECF No. 1).

## STANDARD OF REVIEW

Defendant's Motion is titled a "Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment." (ECF No. 34).  The Court considers Defendant's Motion as a Motion for Summary Judgment as there are no genuine issues of material fact presented in the filings.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a

reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R.

9

Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

I.   **Disability Discrimination**

Defendant Liberty Dialysis-Hawaii, LLC seeks summary

judgment on Plaintiff's claim for discrimination pursuant to the

Americans with Disabilities Act ("ADA").

Title I of the ADA, 42 U.S.C. § 12112(a), prohibits an

employer from discriminating "against a qualified individual with

a disability because of the disability of such individual in

regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment."   42

U.S.C. § 12112(a).

The Court applies the burden-shifting analysis derived from

McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973) to claims of

discrimination on account of a disability.   Raytheon Co. v.

Hernandez, 540 U.S. 44, 49-50 (2003).

Under the burden-shifting analysis, the employee must first

establish a prima facie disability discrimination claim.

Raytheon Co., 540 U.S. at 49 n.3.   The employee must put forth

evidence that:

    (1)  he was "disabled" within the meaning of the ADA
         statute;

    (2)  he was a "qualified individual," meaning he was able to
         perform the essential functions of his job, either with
         or without reasonable accommodations at the time of his

disability; and,

(3)  he suffered an adverse employment action "because of"
      his disability.

Hutton v. Elf Atochem North Am., Inc., 273 F.3d 884, 891
(9th Cir. 2001).

Plaintiff Pfendler cannot establish the second prong of the
McDonnell Douglas analysis.  Plaintiff has not put forth the
required evidence to demonstrate that he was a qualified
individual following his injury in January 2012.  Defendant is
entitled to summary judgment on Plaintiff's disability
discrimination claim.

### 1.   "Disabled"

The ADA defines disability with respect to an individual as
"(A) a physical or mental impairment that substantially limits
one or more of the major life activities of such individual; (B)
a record of such impairment; or (C) being regarding as having
such an impairment."  42 U.S.C. § 12102(1).

In 2008, Congress adopted the ADA Amendments Act, in order
to clarify that the intention of the Americans with Disabilities
Act is to provide a broad scope of protection and to expressly
reject the more stringent standards set forth in Sutton v. United
Air Lines, 527 U.S. 471 (1999); Pub. L. No. 110-325, 122 Stat.
3553 (2008).

The Court assumes, but does not decide, that Plaintiff

12

Pfendler was disabled within the meaning of the ADA following his left shoulder injury in January 2012. Martinez v. University Medical Center, 2015 WL 315708, *6 (D. Nev. Jan. 26, 2015) (stating that a back impairment resulting in a 20-pound lifting restriction that lasted several months could qualify a plaintiff as being "disabled"); Rico v. Xcel Energy, Inc., 893 F.Supp.2d 1165, 1170 (D. N.M. Sept. 25, 2012) (finding restriction on lifting over 60 pounds may substantially limit plaintiff's major life activity); cf. Sanchez v. United Parcel Service, Inc., 625 Fed. Appx. 806, 808 (9th Cir. 2015) (finding that the plaintiff's inability to lift more than 25 pounds did not substantially limit his major life activity pursuant to the pre-ADAA amendments).

Even assuming Plaintiff can establish the first prong of the McDonnell Douglas analysis, Defendant is entitled to summary judgment because Plaintiff is unable to demonstrate the second prong of the test for his disability discrimination claim.

Plaintiff has not provided evidence to establish that he was a qualified individual able to perform the essential functions of a Disability Technician Specialist after he suffered his shoulder injury in January 2012.

> **2.    Plaintiff Was Not a "Qualified Individual" for the Dialysis Technical Specialist Position Following His Injury in January 2012**

The ADA defines "qualified individual" as an individual with

a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  42 U.S.C. § 12111(8); <u>Nunes v. Wal-Mart, Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999).

The ADA requires that a plaintiff be able to perform the essential functions of his job "with or without reasonable accommodation."  42 U.S.C. § 12111(8).

### A.   Plaintiff Began His Position as a Dialysis Technical Specialist in June 2011

Plaintiff Pfendler began working for Defendant in 2006 and was promoted over a five year period to the position of Assistant Chief Technician and then to the position of Chief Technician in August 2008.  (Pfendler Depo. at pp. 35-36, ECF No. 35-8).

On June 20, 2011, Plaintiff applied to change his position from that of Chief Technician to Dialysis Technical Specialist. (Internal Application dated June 20, 2011, attached as Ex. 10 to Pfendler Depo, ECF No. 35-9 at p. 9).  Plaintiff stated that he sought to change from the Chief Technician position to that of the lesser Dialysis Technical Specialist position because he was "unable to meet the demands of Chief Tech schedule."  (<u>Id.</u>)

On June 22, 2011, Plaintiff accepted the Dialysis Technical Specialist Position.  (Applicant Routing/Interview Evaluation Sheet, attached as Ex. 11 to Pfendler Depo., ECF No. 35-9 at p. 10).

14

**B.    Plaintiff Was Unable to Perform His Job from
        January 16, 2012 until March 14, 2012**

There is no dispute that Plaintiff became totally
incapacitated and unable to work as a Dialysis Technical
Specialist when he injured his left shoulder in January 2012.

In January 2012, approximately seven months after Plaintiff
began as a Dialysis Technical Specialist, Plaintiff Pfendler
injured his left shoulder at home and sought medical leave.
(Pfendler Depo. at 99-13-14, ECF No. 35-8; Whaley Decl. at 11,
ECF No. 35-2).

Defendant granted Plaintiff's request for medical leave from
January 16, 2012 until March 14, 2012 as a result of Plaintiff's
shoulder injury.  (Whaley Decl. at ¶ 11-15, ECF No. 35-2).
Defendant granted Plaintiff's request for leave based on the
medical documentation that he provided stating he was "totally
incapacitated" and could not return to work.  (Orthopedic
Associates of Hawaii Certificate dated January 16, 2012, January
23, 2012, Ex. 17 attached to Pfendler Depo., ECF No. 35-10 at p.
1-2; Certification of Health Care Provider for Employee's Serious
Health Condition, attached as Ex. 14 to Pfendler Depo., ECF No.
35-9 at p. 16-19).

**C.    Plaintiff Was Unable to Return to the
        Dialysis Technical Specialist Position
        Because He Could Not Perform the Essential
        Functions of the Position**

15

On March 14, 2012, Plaintiff provided Defendant with documentation from a new health care provider, Dr. Jason Kaneshige from Island Orthopaedics, who indicated that Plaintiff could return to work but was restricted from lifting more than 30 pounds.  (Return to Duty Form dated March 14, 2012, from Dr. Jason Kaneshige, Island Orthopaedics, ECF No. 35-10 at p. 10).

Plaintiff claims that he could perform the essential functions of his position as a Dialysis Technical Specialist beginning in March 2012 despite the fact that he was restricted from lifting any more than 30 pounds.

### 1.   Lifting More than 50 Pounds Was an Essential Function of the Dialysis Technical Specialist Position

A job's essential functions are the fundamental job duties of the employment position not including the marginal functions of the position.  29 C.F.R. § 1630.2(n)(1); Bates v. United Parcel Service, Inc., 511 F.3d 974, 990 (9th Cir. 2007).

The defendant employer has the burden of production to establish what job functions are essential as "much of the information which determines those essential functions lies uniquely with the employer."  Samper v. Providence St. Vincent Medical Center, 675 F.3d 1233, 1237 (9th Cir. 2012).

Evidence of whether a particular function is essential

includes the employer's judgment as to which functions are essential, written job descriptions, the consequences of not requiring the employee to perform the function, and the current work experience of employees in similar jobs. Samper, 675 F.3d at 1238; 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3).

There is undisputed evidence that lifting more than 50 pounds was an essential function of the Dialysis Technical Specialist Position.

The summary of duties listed in the Dialysis Technical Specialist job written description provided, as follows:

> Under the supervision of the Chief Technician the Dialysis Technical Specialist is responsible for: overall operation, repair and maintenance of the physical plant, water treatment equipment, medical equipment plumbing, electrical systems and maintaining environmental cleanliness, implementation of the preventative maintenance program including: physical plant, water treatment, medical equipment, reuse equipment, concentrate mixing equipment and test equipment....

(Liberty Dialysis-Hawaii Job Description and Performance Evaluation, attached as Ex. 13 to Pfendler Depo., ECF No. 35-9 at p. 12).

The written job description specifically provided that lifting 75 to 100 pounds was required for the Dialysis Technical Specialist position. (Id. at p. 14).

The written job description is not the only factor to be considered in evaluating if the requirement is an essential job function. Rohr v. Salt River Project, 555 F.3d 850, 867 (9th

17

Cir. 2009) (citing Cripe v. City of San Jose, 261 F.3d 877, 887 (9th Cir. 2001)).

Here, the written job description set forth by the Defendant was supported by the Plaintiff's own description of the essential functions of the Dialysis Technical Specialist position. Plaintiff had extensive knowledge of the requirements for the Dialysis Technical Specialist position because he previously held the supervisory role as the Chief Technician from August 2008 until June 2011. (Pfendler Depo. at pp. 36-38, 61, 89, ECF No. 35-8).

Plaintiff testified in his deposition that the Dialysis Technical Specialist was an active, physical job that required lifting. (Pfendler Depo. at pp. 2-3, ECF No. 35-8). Plaintiff described the position as follows:

> So all of the devices used in dialysis, electronic devices, have some sort of maintenance requirement. The dialysis machines in particular require a lot of maintenance, and the majority of my activities as a Dialysis Technical Specialist is performing routine maintenance, quarterly, semiannual and annual maintenance on dialysis machines, as well as trouble-shooting and repairs for machines that get broken. And that is the lion's share of what the DTS does, is repair and maintenance on dialysis machines....
>
> Secondarily or maybe first, the same is true about the water treatment system. The reverse osmosis system has a lot of components that all require scheduled maintenance and sometimes require emergent repairs. So all that stuff is scheduled, as far as the routine stuff is all scheduled, and most of my hours as a DTS were spent working on dialysis machines or the water treatment system or other devices that are used in the dialysis clinic.

18

(Pfendler Depo. at pp. 62-63, ECF No. 35-8).

Plaintiff testified that the position required lifting more than 50 pounds. (Pfendler Depo. at pp. 73-75, ECF No. 35-8). Plaintiff testified that he had to reposition and lift up dialysis recliners that were somewhere between 35 and 70 pounds. (Pfendler Depo. at pp. 75-76, ECF No. 35-8). Plaintiff stated that dialysis machines were more than 50 pounds and maybe more than 100 pounds. (Pfendler Depo at p. 77, ECF No. 35-8). Plaintiff testified that he was required to move saline bags and boxes that weighed close to 50 pounds. (Pfendler Depo. at p. 78, ECF No. 35-8). Plaintiff stated that the job required him to lift 40 pound boxes and place the contents into four feet tall water tanks. (Pfendler at pp. 83-84, ECF No. 35-8).

Plaintiff testified that he could not have performed all of the duties of the Dialysis Technical Specialist in March 2012, because he was unable to lift more than 30 pounds. (Pfendler Depo. at p. 95, 99, 101, ECF No. 35-8). Plaintiff agreed that he had been required to lift at least 75 to 100 pound weights when he performed the functions of a Dialysis Technical Specialist. (Pfendler Depo. at p. 89, ECF No. 35-8). Plaintiff testified that when he was the Chief Technician for nearly three years he had evaluated employees in the Dialysis Technical Specialist position with the understanding that it required lifting of 75 to 100 pounds. (Pfendler Depo. at pp. 89-90, ECF No. 35-8).

19

Even if we assume that the Dialysis Technical Specialist position required lifting more than 50 pounds, instead of 75 to 100 pounds as set forth in the written job description, Plaintiff was not qualified to do the job of the Dialysis Technical Specialist.  Plaintiff was unable to perform the essential functions of the position because he could not lift the weight he acknowledges was required following his injury in January 2012.

> **2.    Defendant Provided Plaintiff with a Reasonable Accommodation from March 2012 to January 2013 By Granting his Request for Medical Leave**

In March 2012, Plaintiff asked Defendant's Human Resources Manager, Mary Ann Whaley, if he could return to his Dialysis Technical Specialist on "light duty" where he could be excused from lifting duties.  (Whaley Decl. at ¶ 18, ECF No. 35-2).

Whaley inquired with the Defendant's Director of Technical Services, James Bates, to explore if it was possible for Plaintiff to return to his position as a Dialysis Technical Specialist on "light duty" and be excused from lifting duties. (Id. at ¶ 19).  Bates informed Whaley that "heavy lifting duties are an essential part of his job".  (Id.)  Whaley informed Plaintiff that he could not return to his Dialysis Technical Specialist position because heavy lifting was an essential function of his position and told Plaintiff he could remain on medical leave until he recovered.  (Id.)

20

Plaintiff argues that he should have been able to return to his position even though he could not perform the essential functions of lifting more than 50 pounds as was required by the Dialysis Technical Specialist Position.

The Ninth Circuit Court of Appeals has held that the Americans with Disabilities Act does not require an employer to exempt an employee from performing essential functions of a position or to reallocate essential functions of the position to other employees. Dark v. Curry County, 451 F.3d 1078, 1089 (9th Cir. 2008); 29 C.F.R. Part 1630, App; see Hill v. Walker, 737 F.3d 12091217 (8th Cir. 2013); Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991).

Plaintiff has not put forth any evidence to establish that reallocating the heavy lifting tasks required in the Dialysis Technical Specialist position was an accommodation that was possible or reasonable under the circumstances. 42 U.S.C. § 12111(8). It is the plaintiff's burden to establish that a reasonable accommodation is possible. Dark, 451 F.3d at 1088; Zukle v. Regents of Univ. Of Cal., 1966 F.3d 1041, 1047 (9th Cir. 1999).

An employer is not obligated to provide an employee the exact accommodation he requests or prefers, the employer need only provide some reasonable accommodation. Zivkovic v. So. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002); US Airways, Inc.

21

v. Barnett, 535 U.S. 394, 406 (2002).

Defendant accommodated Plaintiff for more than 12 months following his injury in January 2012 by allowing him to take medical leave.  The Ninth Circuit Court of Appeals has recognized that medical leave may be a reasonable accommodation under the ADA.  Dark, 451 F.3d at 1090 (citing Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999)).

From January 2012 to March 2012, Plaintiff was granted medical leave because he was totally incapacitated.  In March 2012, Plaintiff provided Defendant with medical documentation that stated he was unable to lift more than 30 pounds and was unable to complete "any repetitive overhead lifting" until August 2012.  (Return to Duty Form dated April 24, 2012, from Dr. Jason Kaneshige, Island Orthopaedics, ECF No. 35-10 at p. 12; Medical Certificates dated June 5, 2012 and June 22, 2012, from Dr. Jayson H. Takata, Pacific Physical Medicine Assoc. LLP, ECF No. 35-10 at p. 13-14).

Between August and December 2012, Plaintiff provided updated medical certificates but he was still restricted from lifting more than 50 pounds and was restricted from overhead lifting. (Medical Certificate dated August 3, 2012, from Dr. Jayson H. Takata, restricting lifting over 40 pounds and any overhead lifting, ECF No. 35-10 at p. 15; Medical Certificate dated September 18, 2012 and October 30, 2012, from Dr. Jayson H.

Takata, restricting lifting over 40 pounds and no overhead
lifting, ECF No. 35-10 at pp. 16-17; Medical Certificate dated
December 18, 2012 and December 28, 2012, from Jayson H. Takata,
restricting lifting over 50 pounds and no overhead lifting, ECF
No. 35-10 at pp. 18-19).

Plaintiff Pfendler admitted in his deposition that lifting
more than 50 pounds and lifting of at least four feet high were
necessary requirements of the Dialysis Technical Specialist
position.  (Pfendler Depo. at pp. 73-78, 83-84, 89-90, ECF No.
38-5).

The undisputed evidence demonstrates that Plaintiff Pfendler
was unable to perform the essential functions of the Dialysis
Technical Specialist position between January 2012 and January
2013.  Defendant provided Plaintiff with reasonable
accommodations during this period by granting his request for
medical leave from January 2012 until January 2013. (Whaley Decl.
at ¶ 15, ECF No. 35-2).

                    3.   **Defendant Provided Plaintiff with
                         Reasonable Accommodations in January
                         2013 by Granting His Job Transfer
                         Application**

In December 2012, Plaintiff Pfendler informed Defendant that
he decided to have surgery to fix his shoulder.  (Whaley Decl. at
¶ 27, ECF No. 35-2).  At this time, Defendant's Director of Human
Resources asked Plaintiff if he would like to consider applying

23

for a transfer to a position that did not have the heavy lifting requirements of the Dialysis Technical Specialist position so that he could return to work.  (Id. at ¶ 28).

On January 8, 2013, Plaintiff Pfendler applied for an internal job transfer with Defendant and sought to transfer from the Dialysis Technical Specialist position to the Hemodialysis Technician II position.  (Whaley Decl. at ¶ 29, ECF No. 35-2; Internal Application dated January 8, 2013, attached as Ex. 15 to Pfendler Depo., ECF No. 35-9 at p. 20).

Defendant accepted Plaintiff's application for the job transfer and Plaintiff returned to work as a Hemodialysis Technician II on January 21, 2013.  (Letter from Defendant to Plaintiff dated January 17, 2013, attached as Ex. D to Pla.'s CSF, ECF No. 35-6).

Defendant claims that the transfer was not a reasonable accommodation because the Hemodialysis Technician II position was a "lesser position."

Reassignment or transfer to a lesser position is a reasonable accommodation when there was no reasonable accommodation that would allow the employee to perform the essential function of his previous position and there was no vacant equivalent position to which the employer could reassign the employee.  Reza v. Int'l Game Tech., 351 Fed. Appx. 188, 190 (9th Cir. 2009); 42 U.S.C. § 12111(9)(B).

24

Here, Plaintiff Pfendler was unable to perform the essential functions of the Dialysis Technical Specialist position following his injury in January 2012.  Plaintiff has not provided any evidence that there was a vacant position equivalent to the Dialysis Technical Specialist position to which he could have been reassigned in January 2013.  The undisputed facts demonstrate that it was Plaintiff who chose to apply for the Hemodialysis Technician II position.  (Pfendler Depo. at p. 109-112, ECF No. 35-8).

Defendant reasonably accommodated Plaintiff Pfendler from January 2012 until January 2013 by providing him with medical leave.  In January 2013, Defendant reasonably accommodated Plaintiff by granting his request for an internal job transfer to the Hemodialysis Technician II position.  Plaintiff sought no further accommodations from Defendant.

Plaintiff Pfendler has failed to put forth evidence of a prima facie case that he was "a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the Dialysis Technical Specialist position.  42 U.S.C. § 12111(8).  Plaintiff cannot establish the second prong of the McDonnell Douglas framework for a disability discrimination cause of action.

Defendant's Motion for Summary Judgment as to Plaintiff's claim for disability discrimination is **GRANTED**.

25

## II.  Count Two - Retaliation

Federal law prohibits retaliation against an employee for making a charge or otherwise participating in a proceeding pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12203(a).

Section 503(a) of the Americans with Disabilities Act provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that:

(1)  he engaged in a protected activity;

(2)  the defendant subjected the plaintiff to an adverse employment action; and

(3)  a causal link existed between the protected activity and the adverse employment action.

Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003).

Filing a complaint with the EEOC constitutes a protected activity for a retaliation claim.  Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).

Plaintiff established that he engaged in a protected activity when on November 29, 2012, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission. (Charge of Discrimination at p. 2, ECF No. 44-3).

Plaintiff has failed to demonstrate that he suffered an adverse employment action as a result of his filing the Charge of Discrimination.

An action is cognizable as an adverse employment action in a retaliation case if it is reasonably likely to deter employees from engaging in a protected activity.  Ray, 217 F.3d at 1243; Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006).

Plaintiff has not demonstrated how his voluntary decision to apply for an internal job transfer constitutes an adverse employment action that would reasonably likely deter employees from engaging in a protected activity.  Ray, 217 F.3d at 1240; Brown v. Donahoe, 2013 WL 6048798, *8 (D. Ariz. 2013)(finding the plaintiff's reasonable accommodation was not an adverse employment action); Mead v. Bank of America, 2008 WL 706632, *6 (D. Nev. 2008)(holding that the plaintiff's voluntary resignation was not an adverse employment action).

The undisputed evidence demonstrated that in December 2012, Defendant's Human Resources Manager engaged in the interactive process with Plaintiff to try and determine if additional

reasonable accommodations were possible given that Defendant had been granted nearly 12 months of medical leave due to his shoulder injury.  Defendant's engagement in the interactive process to determine if a reasonable accommodation was possible was required pursuant to the ADA.  Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001); see 29 C.F.R. § 1630.2(o)(3).

Plaintiff has not presented any evidence that Defendant's engagement with Plaintiff in the required interactive process was an adverse employment action.  Defendant's engagement in the required interactive process resulted in providing Plaintiff with a reasonable accommodation.  Providing a reasonable accommodation that was voluntarily accepted by the Plaintiff is not an adverse employment action.  Reza, 351 Fed. Appx. at 190; see Dawson v. Akal Security Inc., 2016 WL 4363169, *1 (9th Cir. Aug. 16, 2016).

Defendant's Motion for Summary Judgment as to Plaintiff's Claim for Retaliation is **GRANTED**.


### CONCLUSION

Defendant Liberty Dialysis-Hawaii, LLC's Motion for Summary Judgment (ECF No. 34) is **GRANTED.**

There are no remaining claims or parties herein.

//

//

28

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and to close the case.


IT IS SO ORDERED.

DATED: September 22, 2016, Honolulu, Hawaii.



_____
Helen Gillmor
United States District Judge

Victor E. Pfendler v. Liberty Dialysis-Hawaii, LLC, Civ. No. 14-00377 HG-KJM; **ORDER GRANTING DEFENDANT LIBERTY DIALYSIS-HAWAII'S MOTION FOR SUMMARY JUDGMENT (ECF No. 34)**